```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

UNITED STATES OF AMERICA      )
                              )
        v.                    )      1:19CR71
                              )
TASKEEN LAWRENCE TYLER        )

## MEMORANDUM ORDER

Before the court is pro se Defendant Taskeen Lawrence Tyler's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. 85.) The Government has responded in opposition. (Docs. 87, 88.) For the reasons set forth below, Tyler's motion will be denied.

**I. BACKGROUND**

On August 27, 2018, Tyler absconded from his place of confinement at Dismas Charities Residential Reentry Center where he was serving a 70-month federal sentence for possession of a firearm by a convicted felon imposed by the U.S. District Court for the Western District of North Carolina. (Doc. 18 at 1.) In September 2018, Truliant Federal Credit Union in Greensboro was robbed of $5,000. (Id. at 2.) Shortly afterward, the director of Dismas Charities contacted the Greensboro Police Department and identified Tyler as the man shown in publicized surveillance photos of the robbery. (Id.) The next day, the Winston-Salem Police Department apprehended Tyler in a Winston-Salem motel room, where there were also drugs, drug paraphernalia, and a revolver. (Id.

at 2-4.)

On February 25, 2019, Tyler was indicted on one count of escape from federal custody in violation of 18 U.S.C. § 751(a) ("Count I") and one count of robbery of a credit union in violation of 18 U.S.C. § 2113(a) ("Count II").  (Doc. 1.)  On April 29, 2019, a superseding indictment added one count of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2) ("Count III").  (Doc. 11.)  Tyler pled guilty to Counts II and III on June 11, 2019 (Doc. 19), but he later moved for and was granted leave to withdraw his plea in light of the Supreme Court's decision in Rehaif v. United States, 139 S. Ct. 2191 (2019), which left the indictment defective as to Count III[1] (Docs. 25, 26).

The Government then filed a bill of information in related case number 1:19CR576-1, which corrected the defect as to the § 922(g)(1) charge in light of Rehaif.[2]  Tyler pled not guilty in the related case, thus prompting the filing of another superseding indictment in this case on November 25, 2019, which included all three counts.  (Doc. 32.)  Tyler waived his right to trial by jury

---

[1] In Rehaif, the Court held that "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm."  139 S. Ct. at 2200.  Count III of the April 29, 2019 indictment failed to allege that Tyler knew of his status as a felon.  (Doc. 11 at 2.)

[2] The bill of information contained only Counts II and III of the April 29, 2019 indictment and is filed as Docket Entry 1 in Case Number 1:19cr576.

2

(Doc. 43), and after a bench trial before the undersigned he was found guilty on all three counts on February 10, 2020 (see Doc. 68). He was sentenced to 60 months of imprisonment on Count I, 150 months of imprisonment on Count II, and 120 months of imprisonment on Count III to run concurrently with each other, followed by 3 years of supervised release. (Doc. 58.) The Fourth Circuit affirmed the judgment on August 23, 2021. (Doc. 73.)

On August 31, 2022, Tyler moved to vacate his sentence pursuant to 28 U.S.C. § 2255, which motion is still pending. (Doc. 77.) He now moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. 85.) Tyler has served approximately 4 and one-half years of his 12 and one-half year sentence, and his presumptive release date is May 27, 2029. (Doc. 87-1 at 4; see also Fed. Bureau of Prisons, Find an Inmate, at https://www.bop.gov/inmateloc/ (last accessed July 25, 2023).) He is approximately 45 years old. (Doc. 51 at 22.)

Tyler contends that he should be released for reasons primarily related to COVID-19-caused medical conditions. He contracted COVID-19 while in custody in July 2020 and lists several resulting maladies, including "complications with [his] eye sight," migraine headaches, and an inability to "be healthy" or to strengthen his body after the sickness. (Doc. 85 at 6.) Tyler also references mental illness and states that the medical resources available to him in prison are not adequate to address

3

his medical issues. (Id. at 6-7.) He expresses "constant worry" about his health. (Id. at 7.) Additionally, he describes undergoing a change of heart regarding the judicial system and his imprisonment. (Id. at 1-2.) He is proud to have received his GED while in prison (id. at 2, 9) and has written several books (id. at 2). He also offers several business ideas that he desires to initiate upon his release (id. at 2-3) and lists the programs and self-study courses he has completed (id. at 5).

In addition to the above factors, Tyler also raises claims concerning the validity of his conviction relating to the withdrawal of his original guilty plea and to certain testimony at trial. (Id. at 4-5.) The Government opposes the motion, arguing that Tyler's circumstances are not extraordinary and compelling and that the § 3553(a) factors do not support his release. (Doc. 87 at 6-11.)

**II. ANALYSIS**

"Federal law has long authorized courts to reduce the sentences of federal prisoners facing extraordinary health conditions," but prior to the passage of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, district courts could grant such reductions only upon a motion by the Director of the Bureau of Prisons ("BOP") pursuant to 18 U.S.C. § 3582(c)(1). United States v. Beck, 425 F. Supp. 3d 573, 577-78 (M.D.N.C. 2019). However, Congress amended § 3582(c)(1) when it passed the First

4

Step Act.  Pertinent here, the First Step Act added a provision to § 3582(c)(1) that allows a defendant to bring a motion for compassionate release directly in a district court after either "the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Once the exhaustion requirement is met, a defendant must either (1) have "extraordinary and compelling reasons" for a compassionate release or (2) be at least 70 years old, have served 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the public.  (Id.)  The defendant bears the burden of establishing extraordinary and compelling reasons to justify release. See United States v. Newton, 996 F.3d 485, 488 (7th Cir. 2021); see, e.g., United States v. Hargrove, 30 F.4th 189, 195 (4th Cir. 2022).  Further, while a court need not address every argument raised by a defendant, it must fully explain its decision in light of the particular circumstances of each case. United States v. Osman, No. 21-7150, 2022 WL 485183, at *2 (4th Cir. Feb. 17, 2022)[3] (citing United

---

[3] Unpublished opinions of the Fourth Circuit are not precedential but can be cited for their persuasive, but not controlling, authority. See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006).

5

States v. High, 997 F.3d 181, 188-89 (4th Cir. 2021)). Additionally, a court, in considering a reduction in sentence pursuant to § 3582(c)(1)(A), must consult the sentencing factors set forth in 18 U.S.C. § 3553(a) and may grant the reduction if it finds it is "consistent with [the] applicable policy statements" issued by the United States Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).

United States Sentencing Guideline § 1B1.13 essentially reiterates the requirements of § 3582(c)(1)(A), with the additional provision that a defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2); see also Beck, 425 F. Supp. 3d at 578. The application notes to § 1B1.13 provide examples of extraordinary and compelling reasons to grant a compassionate release, including when an inmate is suffering from a debilitating medical condition that has "substantially diminishe[d] the ability of the [inmate] to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 application note 1(A)(ii).

Because until recently the Sentencing Commission lacked a quorum, it had not updated its policy statements on compassionate release since the First Step Act was signed into law in December 2018. See United States v. McCoy, 981 F.3d 271, 282 n.6 (4th Cir.

6

2020).[4] The current phrasing of §1B1.13 therefore addresses scenarios in which the BOP Director files a motion for compassionate release, but not situations in which an inmate files a similar motion under § 3582. As the language of § 1B1.13 limits its application to motions filed by the BOP Director, the Fourth Circuit has held that "§ 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)." Id. at 282; United States v. Kibble, 992 F.3d 326, 330-31 (4th Cir. 2021). Accordingly, it has stated that "district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction." McCoy, 981 F.3d at 283. Section 1B1.13 may be considered as helpful guidance, however, when considering a motion filed by an inmate. Id. at 282 n.7.[5]

---

[4] In February 2023, the Commission issued Proposed Amendments to the Sentencing Guidelines. United States Sentencing Commission, Proposed Amendments to the Sentencing Guidelines, (February 2, 2023), https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20230201_RF-proposed.pdf. These amendments were adopted and submitted to Congress on April 27, 2023, and will take effect on November 1, 2023, in the absence of Congressional action. United States Sentencing Commission, Amendments to the Sentencing Guidelines, (April 27, 2023), https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf. Though these proposed amendments are not yet in effect, none would alter the court's analysis contained herein.

[5] The majority of circuits appear to follow this view that § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A). See United States v. Jackson, 27 F.4th 1088, 1090 n.1. (5th Cir. 2022) (noting that this view is held by the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Ninth, Tenth, and D.C. Circuits, but is rejected by the Eleventh Circuit).

7

Courts do not have unfettered jurisdiction or discretion to modify criminal sentences. See United States v. Goodwyn, 596 F.3d 233, 235 (4th Cir. 2010) ("The law closely guards the finality of criminal sentences against judicial change of heart.") (internal quotations omitted). A court may modify a sentence only when a provision in the Federal Rules of Criminal Procedure or a statute, such as 18 U.S.C. § 3582(c), expressly permits it to do so. Even then, § 3582(c) is appropriately invoked only in unusual situations, or, as the Fourth Circuit counseled, the "most grievous cases." McCoy, 981 F.3d at 287; see Osman v. United States, Crim. No. 2:10-cr-57-5, 2023 WL 3765246, at *4 (E.D. Va. June 1, 2023) ("The Senate Judiciary Committee report on the Sentencing Reform Act explained that compassionate release would address 'unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances.'" (citations omitted)). It is not a vehicle for repeated reconsideration of sentences as a way to circumvent the general rule of finality. See Goodwyn, 596 F.3d at 235-36.

The compassionate release statute requires a defendant to either "fully exhaust[] all administrative rights to appeal" the BOP's failure to bring a motion on the defendant's behalf or "the lapse of 30 days from the receipt of such a request by the warden," whichever is earlier. § 3582(c)(1)(A); see also United States v. Alam, 960 F.3d 831, 836 (6th Cir. 2020) (noting that after "their

8

initial petition to their wardens . . . prisoners can pursue administrative review. If that also comes up short (or if 30 days pass), prisoners have the option to go to federal court"). Here, the Government concedes that "Tyler has complied with the administrative exhaustion requirement." (Doc. 87 at 4 n.1.) The court thus turns to the merits.

### A. Conviction Challenges

Among his arguments for extraordinary and compelling reasons supporting his release, Tyler reiterates arguments about his conviction that he previously raised in a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (Compare Doc. 85 at 4-5 with Doc. 77.) He cites issues regarding the withdrawal of his plea as well as certain witness testimony at trial. (Doc. 77.) The "exclusive method of collaterally attacking a federal conviction or sentence" is a § 2255 motion; for this reason, "a criminal defendant is foreclosed from the use of . . . [a] compassionate release [motion] . . . to sidestep § 2255's requirements." United States v. Ferguson, 55 F.4th 262, 270 (4th Cir. 2022). Here, Tyler has included these claims in a § 2255 motion, which is still pending. (Doc. 77.) However, he "is foreclosed from making this type of argument in a compassionate release motion." United States v. Durham, Crim. No. 4:94-cr-00044-MR-10, 2023 WL 3671820, at *4 (W.D.N.C. May 25, 2023) (citing

9

Ferguson, 55 F.4th at 270). Thus, the court declines to consider these claims as a basis for extraordinary and compelling reasons.

### B. Health

Tyler argues that his health issues present extraordinary and compelling reasons supporting his release. (Doc. 85 at 6-7.) His records note that he complained of headaches and migraines on a number of occasions, but they also reflect BOP Health Services' efforts to relieve his pain by prescribing various medications, which Tyler failed to take regularly. (Doc. 88 at 9-10, 16, 76.); see United States v. Wax, Crim. No. 14-251, 2020 WL 3468219, at *3 (D.N.J. June 25, 2020) (where the BOP was "adequately managing Defendant's medical care," his hypertension and obesity did not require compassionate release); United States v. Thrift, No. 2:14-cr-00308-JAM, 2020 WL 4352502, at *3 (E.D. Cal. July 29, 2020) (finding that although defendant had suffered "breathing problems and high blood pressure" since contracting COVID-19, compassionate release was not required because "the BOP has been able to adequately manage any symptoms he has suffered"). Aside from Tyler's migraines, the BOP Health Services notes that his current health concerns include "dental caries" and "unspecified lesions of oral mucosa." (Doc. 88 at 76.) But Tyler has refused oral surgery to address these issues (id. at 73) and has likewise failed to appear for multiple medical appointments (id. at 13, 22, 24). Contrary to Tyler's claims, his recent physical examinations

10

indicate that he is in generally good health. (Id. at 9.) While his medical conditions may cause him discomfort, there is no evidence that he lacks "the ability . . . to provide self-care within the environment of a correctional facility" due to these conditions. See U.S.S.G. § 1B1.13 application note 1(A)(ii). Certainly, his conditions, alone or in combination with his other cited factors and the presence of the risk of COVID-19, do not rise to the level of extraordinary and compelling reasons justifying early release.

## C. Good Conduct

Tyler also contends that his change of heart and numerous educational and self-improvement activities support his release. (Doc. 85 at 1-3, 5.) While commendable, his conduct is largely what is expected of incarcerated prisoners: compliance with conduct rules, participation in rehabilitation programs, and learning skills that will lead to a successful transition after incarceration. In addition, the application notes to § 1B1.13, which the court considers for their persuasive value, make clear that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 application note 3.[6] Therefore,

---

[6] The proposed amendments maintain this position, while allowing that "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of

11

the court does not find that Tyler's rehabilitation while incarcerated constitutes an extraordinary and compelling reason warranting compassionate release. See United States v. Hayes, No. ELH-11-258, 2022 WL 2531538, at *18 (D. Md. July 6, 2022) (denying motion because, while "[d]efendant's rehabilitative efforts are laudable," his rehabilitation is insufficient to warrant compassionate release); United States v. Degante, No. 4:17-CR-00075, 2022 WL 2813716, at *4 (E.D. Tex. July 18, 2022) (denying motion in part because a defendant's "[r]ehabilitation alone cannot support a claim for sentence reduction"). This is so even when considered in connection with all his other grounds.

## D. Section 3553(a) Factors

Even if the court were to find that Tyler has demonstrated extraordinary and compelling circumstances, the § 3553(a) factors weigh against granting his release.

Section 3553(a) requires a court to impose a sentence that is "sufficient, but not greater than necessary" to comply with the statutory purposes of sentencing. 18 U.S.C. § 3553(a). Importantly, the Fourth Circuit has counseled that the "text of § 3553(a) does not make any factor, or combination of factors,

---

imprisonment is warranted." United States Sentencing Commission, Amendments to the Sentencing Guidelines, supra n.4, at 11. Even were these amendments in effect, the court would find Tyler's arguments regarding his rehabilitation insufficient to warrant a different outcome.

<s>12</s>

dispositive." Kibble, 992 F.3d at 334-35 (Gregory, C.J., concurring). Thus, the court must consider –

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence[s] and the sentencing range established for [the applicable offense category as set forth in the guidelines] . . .;
>
> (5) any pertinent policy statement . . . by the Sentencing Commission . . .;
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

These factors weigh heavily against Tyler's release. He was arrested after escaping from federal custody and robbing a credit union. (Doc. 18 at 1-2.) When arrested, Tyler possessed a .22

13

caliber revolver with five unspent rounds of ammunition on the floor in the room where he was found. (Id. at 3-4.) As early as age 19, he pled guilty to felony second degree robbery with use of a firearm. (Doc. 51 ¶ 50.) He has multiple other prior misdemeanor and felony convictions, including felony first degree burglary (id. ¶ 51), felony fleeing a peace officer/reckless driving (id. ¶ 52), and felony possession of a firearm by a convicted felon (id. ¶ 57). During these sentences, his parole was revoked multiple times, and his final sentence concluded with him escaping three weeks before his projected release date. (Id. ¶ 50-52, 57.) It reflects some progress that Tyler expresses a change of attitude toward the justice system and a desire to be a better "Father, Brother, and Friend." (Doc. 85 at 1-2.) However, his current expressions do not outweigh the seriousness of his underlying conviction and criminal history. The need for the sentence to promote respect for the law, protect the public, and provide just punishment and deterrence all weigh against release.

Because Tyler fails to demonstrate extraordinary and compelling reasons to support his compassionate release, and even if he did, because the § 3553(a) factors weigh against release, his motion will be denied.

## III. CONCLUSION

For the reasons stated,

14

IT IS THEREFORE ORDERED that Tyler's motion for compassionate release (Doc. 85) is DENIED.

                                            /s/   Thomas D. Schroeder
                                        United States District Judge

July 26, 2023